UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JAMES LAPIERRE, )<br>)<br>Defendant. ) | 2:25-cr-00102-SDN-1 |

## **ORDER**

In this matter, the Government has charged Defendant James Lapierre with attempted sex trafficking of a minor in violation of 18 U.S.C. §§ 1591(a)(1), (b)(2), and 1594(a) by indictment dated July 9, 2025. ECF No. 26. Mr. Lapierre now moves to dismiss the indictment for entrapment, *see* ECF No. 28, and selective prosecution, *see* ECF No. 29. He also moves to suppress "all evidence obtained as a result of his arrest," arguing his arrest was not supported by probable cause. ECF No. 41 at 1. Mr. Lapierre further moves for "discovery of all government documents, memoranda, or other items that informed the government's decision not to charge another similarly situated individual in federal court, as opposed to state court," in pursuit of his selective prosecution claim. ECF No. 51 at 2, ¶ 15. On October 27, 2025, the Court denied Mr. Lapierre's motion for discovery without prejudice by written order. ECF No. 54. On Monday, November 17, 2025, the Court held a hearing to address each of Mr. Lapierre's pending motions. For the reasons discussed herein and based on the testimony and argument from the hearing, I now deny each of Mr. Lapierre's pending motions.

## **BACKGROUND**

On April 24, 2025, law enforcement agents posted two separate advertisements on a website commonly used to advertise commercial sex acts. *See* Gov't Exs. 2 & 3. Each

1

advertisement contained a contact phone number, images of what appeared to be a young female, and language advertising the availability of commercial sex acts. On or about April 24, 2025, the number listed in the advertisements received a text message from a number ending in -5721 in response to the advertisements, and a conversation ensued where the user of -5721 asked what services were provided and the rates for such services.

In the first text message exchange ("Gov't Ex. 4"), the undercover chatter[1] stated within the first three messages sent to Mr. Lapierre that her fourteen-year-old sister Emma was offering the services. In response to his requests, the undercover chatter provided Mr. Lapierre with three different photographs of the purported minor: one of her standing with her face obscured, one of her lying on a bed with her face obscured, and one of her lying on a bed depicting her face.[2] During the text conversation, Mr. Lapierre wrote that he was "interested just a bit nervous about how young she is" and texted the chatter, "You do understand what a risk I am taking engaging with a minor." In response, the undercover chatter told Mr. Lapierre "i have a lot to lose w my sis so if u dnt want to come then thats fine" and "i gte its a risk. if u dont want to then dont its not for everyone hun." Throughout the conversation, Mr. Lapierre and the undercover chatter negotiated the rate for services and arranged for the meeting location in South Portland. In the text message exchange in response to the second advertisement ("Gov't Ex. 5"), Mr. Lapierre asked the undercover chatter posing as the minor's older sister if she also provided

---

[1] At the hearing, the Government witness testified that several different law enforcement officers acted as undercover "chatters" and posed as the adult sister for the purported minor throughout the conversations with Mr. Lapierre.

[2] The Government witness also testified the photographs depicted another undercover officer who actually is older than 18. The government argues the appearance of the person in the photograph nonetheless is consistent with that of a 14-year-old and relevant to demonstrate Mr. Lapierre's state of mind—that is, he intended to engage in commercial sexual activity with a minor.

2

services. In response, the undercover chatter stated, "no not me this is all about my sis hun."

Shortly thereafter, Mr. Lapierre arrived at the agreed-upon meeting location of a hotel in South Portland, Maine. Mr. Lapierre proceeded to approach a woman who was another undercover law enforcement officer ("UC2") posing as the advertisement author and Emma's older sister. Mr. Lapierre confirmed he was there for "Emma" and stated he had the money but asked to speak with the adult sister alone in her room. UC2 declined Mr. Lapierre's request to speak alone, provided him with a hotel key to the room of the purported minor, and walked away. After she left, law enforcement officers apprehended Mr. Lapierre and took him into custody.[3] Following his arrest, officers recovered two condoms and around $160.00 in cash on Mr. Lapierre's person, and his personal phone and work phone in his vehicle, the latter of which rang when officers called the telephone number ending in -5721.

During the hearing held on November 17, 2025, the Court heard testimony and oral argument on Mr. Lapierre's pending motions. Specifically, the Court heard testimony from multiple witnesses involved in the "sting" operation that led to Mr. Lapierre's arrest, including Maine State Police Detective Dezarae Fillmyer, who was both an undercover "chatter" and the undercover officer who engaged in face-to-face contact with Mr. Lapierre upon his arrival to the hotel.

At the hearing, Mr. Lapierre's counsel also argued that the Government lacked probable cause to arrest Mr. Lapierre, based, in part on the fact that "Emma's" photo was

---

[3] In its papers and at the hearing, the Government asserts that Mr. Lapierre proceeded to approach the hotel room door before law enforcement apprehended him. The defense disputes that Mr. Lapierre began to approach. The video depicting the events is from the perspective of law enforcement officers and is inconclusive. Either way, this issue is not determinative to the Court's conclusion.

3

actually that of a legal adult. Counsel asserted that, contrary to the Government's argument that Mr. Lapierre refused to pay until he saw the purported minor, Mr. Lapierre asked to speak with the "older sister" in the privacy of her hotel room in order to convince the "older sister" to provide services to him. The Government responded by arguing Mr. Lapierre took multiple steps in furtherance of the attempted criminal conduct, engaging in commercial sexual activity with a minor, despite being provided multiple "off ramps" by the undercover chatters to not engage.

## DISCUSSION

### I. Motion to Dismiss for Entrapment

#### A. Arguments

In his motion to dismiss for entrapment, Mr. Lapierre argues the indictment against him should be dismissed as a "matter of law" because the "essential elements of entrapment [are] uncontradicted." ECF No. 28 at 2 (citing *United States v. Price*, 945 F.2d 331, 332 (10th Cir. 1991)). Mr. Lapierre argues the text message exchange between himself and the undercover officer demonstrates that the Government "attempted to improperly persuade or talk the Defendant into committing the crime" and that Mr. Lapierre was "clearly uncomfortable with the nature of a commercial sex transaction[] involving a minor." *Id.* at 2, 3. Mr. Lapierre contends that he asked the undercover officer if she, presumably an adult, also "provided services" but was "steered away from getting what he asked for" and instead "steered toward a minor." *Id.* at 3. Mr. Lapierre asserts the chatter stated via text that the minor was "really experienced [a]nd likes doing it," which implied the Defendant would be doing the minor a favor by paying her money for something she liked doing. *Id.* Next, Mr. Lapierre argues that he showed reluctance to commit the offense by stating how nervous he was about the minor's age and by stating

4

upon arrival at the hotel that he wanted to speak alone with the adult. Mr. Lapierre asserts he was "persuaded to overcome his reluctance" by the undercover officer during the multiple-hour-long text message exchange. *Id.*

The Government responds that Mr. Lapierre's motion to dismiss based on entrapment is untimely and is instead a matter for trial. ECF No. 44 at 9–10. The Government further contends that even at trial, Mr. Lapierre would not be entitled to a jury instruction regarding an entrapment defense because he has failed to show any inducement on the part of the government. *Id.* at 10.[4]

## B. Analysis

"Entrapment is an issue of fact and is therefore an inappropriate subject for a motion to dismiss." *United States v. Towne*, 705 F. Supp. 2d 125, 136 (D. Mass. 2010); *see United States v. Myers*, 575 F.3d 801, 805 (8th Cir. 2009) ("Because the entrapment defense requires factual determinations about government conduct and its likely effect upon a defendant, the question of entrapment is generally one for the jury, rather than for the court." (quotation modified)); *United States v. Schaffer*, 586 F.3d 414, 426 (6th Cir. 2009) ("It is seldom appropriate to grant a pre-trial motion to dismiss based on an entrapment defense, because the defense focuses on a defendant's state of mind, an evidentiary question."); *Jackson v. United States*, No. 4:11CV01687, 2012 WL 1185029, at *3 (E.D. Mo. Apr. 9, 2012) (finding counsel was not ineffective for failing to raise

---

[4] In support of this argument, the Government states that 1) Mr. Lapierre was informed at the inception of the text message exchange that the subject of the commercial activity was a fourteen-year-old female, 2) the officer clearly communicated that the adult "sister" was not partaking in the sex activity herself, 3) Mr. Lapierre continued to engage and negotiate prices, and 4) he willingly came to the hotel room and brought the agreed-upon cash and his own condoms. ECF No. 44 at 11–13.

entrapment defense prior to trial, because entrapment is an issue of fact and question for the jury rather than the court).

Contrary to Mr. Lapierre's assertion, *Price* does not support the proposition that this Court may find entrapment as a matter of law if the evidence satisfying the essential elements of entrapment is "uncontradicted." ECF No. 28 at 2 (quoting *Price*, 945 F.2d at 332). Should Mr. Lapierre feel it is warranted, he should, at trial raise the issue of entrapment for the Court's consideration as to whether the question should go to the jury. Accordingly, Mr. Lapierre's motion to dismiss on the basis of entrapment is denied.

## II. Motion to Suppress

### A. Arguments

In Mr. Lapierre's amended motion to suppress, he argues the police lacked probable cause to arrest him, and as a result, all physical evidence and statements obtained following his arrest must be suppressed in advance of trial. *See* ECF No. 41 at 1.[5] Mr. Lapierre's primary argument appears to be an extension of his argument in his motion to dismiss for entrapment, as he recounts his telling of the factual allegations and his argument that the Government "engaged in improper persuasion, undue appeal to sympathy, and false statements to overcome the Defendant's reluctance to engage with a minor." *See id*. at 1–2. Specifically, Mr. Lapierre contends his action of refusing to pay any money "until he has a private conversation with the adult" demonstrates he was not prepared to "commit this particular criminal act with a minor" and thus evidences a lack of unequivocal criminal intent. *Id*. at 4.

---

[5] Aside from a brief mention in the introduction of his amended motion, Mr. Lapierre does not make any specific argument regarding the suppression of his post-arrest statements to law enforcement officers, other than his general probable cause argument.

6

In its opposition, the Government argues that Mr. Lapierre "conflates trial arguments with the much lower threshold for probable cause," which requires only "'a probability or substantial chance of criminal activity, not an actual showing of such activity.'" ECF No. 45 at 3 (quoting *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983)). Indeed, Mr. Lapierre appears to argue that the standard for probable cause to arrest requires a "lack of unequivocal criminal intent." ECF No. 41 at 4. However, this standard comes from case law interpreting the First Circuit pattern jury instruction for the crime of Attempt at § 4.18.00, rather than the much lower standard required for probable cause to arrest. *See United States v. Dworken*, 855 F.2d 12, 17 (1st Cir. 1988) (holding that in proving beyond a reasonable doubt the elements of the crime of attempt, if conduct constituting a "substantial step" toward the commission of the substantive offense is the sole proof of criminal intent, "then those steps unequivocally must evidence such a[ criminal] intent").

Next, the Government asserts that the "overwhelming evidence reveals that 1) the defendant intended to commit the substantial offense of sexual trafficking with a minor . . . and (2) took a 'substantial step' towards committing" the offense. ECF No. 45 at 4. In support of this argument, the Government highlights numerous facts tending to establish probable cause to arrest: Mr. Lapierre contacted the advertisement author advertising commercial sexual activity with a minor, continued to communicate after confirming "Emma's" age was fourteen, was sent three photographs of a young female consistent with a 14-year-old girl, negotiated prices for the commercial sexual activity, drove to the location provided by the undercover officer behind the advertisement number, confirmed he was there for "Emma," and took the hotel room key and

7

approached the room where he was told the purported minor was waiting. *Id.* at 5–6.[6] In response to Mr. Lapierre's argument that he wanted to engage with the adult sister rather than "Emma," the Government asserts the "undercover officers clearly closed the door to this possibility multiple times more than one hour before the defendant's arrival at the Hotel." *Id.* at 6.[7]

Regarding Mr. Lapierre's argument to suppress his post-arrest statements to law enforcement officers, the Government contends Mr. Lapierre does not challenge the voluntariness of any statements nor allege a Fifth Amendment violation, and asserts that, in any event, Mr. Lapierre made statements to law enforcement officers after being advised of his *Miranda* rights. *Id.* at 9; *see* Def. Am. Mot. to Suppress, ECF No. 41 at 2 ("Following *Miranda*, the government then interviewed the Defendant and obtained a statement."). The Government thus argues that Mr. Lapierre's motion to suppress for lack of probable cause should be denied, with respect to both the physical evidence and statements obtained by law enforcement officers.

### B. Legal Standard

"'[P]robable cause exists when an officer, acting upon apparently trustworthy information, reasonably can conclude that a crime has been or is about to be committed and that the suspect is implicated in its commission.'" *United States v. Flores*, 888 F.3d 537, 543 (1st Cir. 2018) (quoting *Morelli v. Webster*, 552 F.3d 12, 21 (1st Cir. 2009)). "Whether an officer had probable cause for an arrest is determined by viewing the totality

---

[6] The Government also includes the fact that Mr. Lapierre brought the agreed-upon amount of cash and condoms to the hotel. Because these items were recovered from Mr. Lapierre's person following his arrest, the Court does not consider these facts as part of the probable cause analysis.

[7] For example, in response to Mr. Lapierre's question on whether the adult sister provides services, the undercover officer responded, "no not me this is all about my sis hun." ECF No. 45 at 6.

of the circumstances from the perspective of an objectively reasonable officer." *Karamanoglu v. Town of Yarmouth*, 15 F.4th 82, 87 (1st Cir. 2021). "The relevant inquiry is whether, on balance, the facts known to the officer at the time of the arrest support probable cause." *Id.* at 88. Further, "probable cause is not a creature of certainty and does not require either the level of proof needed to secure a conviction or even an 'unusually high degree of assurance.'" *United States v. Centeno-González*, 989 F.3d 36, 45 (1st Cir. 2021) (quoting *United States v. Clark*, 685 F.3d 72, 76 (1st Cir. 2012)). Rather, "an officer's conclusion that probable cause exists requires only objective reasonableness." *Karamanoglu*, 15 F.4th at 88. Probable cause is "a fluid concept" and "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Flores*, 888 F.3d at 543 (quoting *Gates*, 462 U.S. at 232, 243 n.13). "Probable cause is a common sense, nontechnical concept that deals with the factual and practical considerations of everyday life on which reasonable and prudent [wo]men, not legal technicians, act." *United States v. Vongkaysone*, 434 F.3d 68, 73–74 (1st Cir. 2006) (quotation modified).

### C. Analysis

The totality of circumstances and the facts known to officers at the time of Mr. Lapierre's arrest support a finding of probable cause that Mr. Lapierre had committed the crime of attempted sex trafficking of a minor. The text message exchange between undercover officers and Mr. Lapierre demonstrates his awareness of the purported minor's age and intent to engage in sexual activity with the minor. Mr. Lapierre drove to the location provided and upon arrival, confirmed with the undercover officer that he had the agreed-upon amount of cash and received the hotel room key.

9

The fact that Mr. Lapierre may have expressed some reluctance or discomfort with the age of the purported victim does not alter the fact that law enforcement observed Mr. Lapierre continue to engage in conversation with undercover chatters and negotiate prices for the commercial sexual activity, drive to the hotel, and speak with who he believed to be the victim's older sister regarding the intended sexual activity, all after learning of the purported minor's age. The First Circuit and other appellate courts have repeatedly found that similar conduct is sufficient for a conviction of attempted commercial sex trafficking of a minor or other, similar charges, let alone sufficient for probable cause. *See, e.g., United States v. Berk*, 652 F.3d 132, 139–41 (1st Cir. 2011) (affirming conviction for attempted sex trafficking of a minor where defendant responded to multiple online advertisements and made plans to engage in commercial sexual activity with a minor, including driving to arranged meeting location); *United States v. Saldaña-Rivera*, 914 F.3d 721, 723–26 (1st Cir. 2019) (affirming conviction for attempted coercion and enticement of a minor where defendant engaged in conversation with purported eleven-year-old girl and drove to location for purpose of engaging in sexual activity); *see also United States v. Slim*, 34 F.4th 642, 647–48 (8th Cir. 2022) (affirming finding of probable cause for attempted sex trafficking of a minor where defendant continued conversation after being informed of minor's age and drove to arranged meeting location with cash and condoms). Accordingly, when viewing the facts known to officers at the time of Mr. Lapierre's arrest, the officers' determination of probable cause was objectively reasonable as it established "a probability or substantial chance of criminal activity." *Flores*, 888 F.3d at 543 (quotation modified).

I similarly find unavailing the defense's argument that the fact the photographs provided to Mr. Lapierre depicted an adult woman evidences a lack of probable cause. As

relevant to the arresting officers' determination of probable cause, Mr. Lapierre believed he was shown a photo of a fourteen-year-old girl and proceeded to drive to the provided location with the intent to engage in commercial sexual activity with the purported minor. Mr. Lapierre's motion to suppress for lack of probable cause, with respect to both physical evidence and his post-arrest statements,[8] is denied.

### III.  Motion to Dismiss for Selective Prosecution

#### A. Arguments

Mr. Lapierre also requests that the indictment be dismissed on the basis of selective prosecution, arguing the decision to selectively prosecute Mr. Lapierre over a similarly-situated defendant was based not "upon a comparison of criminal histories; [but] rather a distinction between the Defendants based upon their proficiencies in English." ECF No. 29 at 1. Mr. Lapierre makes this argument based on the Government's decision to decline to prosecute another individual in federal court while bringing charges against Mr. Lapierre. *Id.*[9] Mr. Lapierre contends the decision was not based upon a difference in the individuals' criminal histories or mitigating or aggravating roles in the offense, noting the "conduct of each Defendant was identical" in responding to the same advertisement and location to engage in sex with the purported minor. *Id.* at 3.

---

[8] In neither his motion nor at oral argument has Mr. Lapierre further developed the argument as to why his post-arrest statements should be suppressed with respect to voluntariness or any other constitutional issue. Because "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived," Mr. Lapierre's motion to suppress his post-arrest statements also fails. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990).

[9] According to Mr. Lapierre, the other individual was arrested in the same federal string operation as Mr. Lapierre and was later charged in state court on similar charges, where he faces no mandatory minimum punishment and a maximum of 5 years in state prison, as compared to the 10-year mandatory minimum Mr. Lapierre faces. *Id.*

In response, the Government argues Mr. Lapierre has failed to demonstrate the Government's decision to prosecute him, and not the other individual, was motivated on the basis of any protected characteristic. *See* ECF No. 42 at 5–6. Further, the Government contends, without conceding the issue, that even if the decision to prosecute Mr. Lapierre resulted in a discriminatory effect, Mr. Lapierre cannot demonstrate that the Government intended such a result. *Id.* at 6. The Government asserts that Mr. Lapierre's "fluency in English does not make him a target for discriminatory prosecution but rather is a vital factor in the United States' ability to proceed to trial . . . ." *Id.*; *see also id.* ("If evidence showed that the defendant had difficulty understanding English, this would cast doubt on whether he understood the nature of the agreement that he entered . . . which goes to the heart of the United States' burden at trial."). Additionally, the Government further disputes Mr. Lapierre's contention that his conduct and the other individual's conduct were identical, noting Mr. Lapierre did not assert whether the other individual also gave a post-*Miranda* confession or brought condoms or cash to the hotel. *Id.* at 8.

### B. Legal Standard

"In our criminal justice system, the Government retains broad discretion as to whom to prosecute." *United States v. Cameron*, 658 F. Supp. 2d 241, 244 (D. Me. 2009) (quoting *Wayte v. United States*, 470 U.S. 598, 607 (1985)). In bringing a prosecution, the Government is entitled to a presumption that "the prosecutor acted 'in good faith for reasons of sound governmental policy.'" *United States v. Penagaricano-Soler*, 911 F.2d 833, 837 (1st Cir. 1990) (quoting *United States v. Saade*, 652 F.2d 1126, 1135 (1st Cir. 1981)). Once made, prosecutorial decisions enjoy a "presumption of regularity" which "can be overcome only by a proffer of 'clear evidence' that the prosecutor acted impermissibly in pursuing a case." *United States v. Lewis*, 517 F.3d 20, 25 (1st Cir. 2008)

(quoting *United States v. Armstrong*, 517 U.S. 456, 465 (1996)). "A showing of selective prosecution can, of course, undercut the presumption of regularity." *Id.* Such a showing requires the defendant to "adduce clear evidence of both the discriminatory effect of the prosecution and the prosecutor's discriminatory intent." *Id.*

To overcome the presumption of regularity, the defendant must make a prima facie showing "(1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights." *Penagaricano-Soler*, 911 F.2d at 838 (quoting *United States v. Union Nacional de Trabajadores*, 576 F.2d 388, 395 (1st Cir. 1978)).

In reviewing prosecutorial discretion on the decision to prosecute, the First Circuit has noted that a "multiplicity of factors legitimately may influence the government's decision to prosecute one individual but not another." *Lewis*, 517 F.3d at 27 (citing *Wayte*, 470 U.S. at 607). These factors "may include, inter alia, the comparability of the crimes, the similarities in the manner in which the crimes were committed, the relative efficacy of each prosecution as a deterrent, and the equivalency of the evidence against each prospective defendant." *Id.* "This broad [prosecutorial] discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review." *Wayte*, 470 U.S. at 607. Indeed, "[s]uch factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake." *Id.*

## C. Analysis

For many of the same reasons discussed in my prior order denying Mr. Lapierre's motion for discovery in pursuit of his selective prosecution claim, *see* ECF No. 54, I rule now that his motion to dismiss for selective prosecution is denied. The Government asserts that its decision to prosecute Mr. Lapierre, while declining to prosecute the other individual, was based upon their evaluation of the weight of the evidence and strength of the case against each individual. As compared to the other individual—who is not a native English speaker—the fact that Mr. Lapierre is fluent in English is particularly relevant in this case, where a crucial part of the Government's burden at trial will be proving that the Defendant understood the nature of the agreement he was entering, namely, to engage in commercial sexual activity with a purported minor. These type of factors and considerations involving prosecutorial discretion are "not readily susceptible to the kind of analysis the courts are competent to undertake." *Penagaricano-Soler*, 911 F.2d at 837 (quoting *Wayte*, 470 U.S. at 607). Moreover, even if Mr. Lapierre could establish that the Government's decision resulted in a discriminatory effect, he cannot further establish that the decision to prosecute him in federal court, while declining to prosecute the other individual, was made for a discriminatory intent or purpose.[10] Accordingly, Mr. Lapierre's motion to dismiss for selective prosecution is denied.

## CONCLUSION

For the foregoing reasons, Mr. Lapierre's motions to dismiss for entrapment, ECF No. 28, and for selective prosecution, ECF No. 29, are each **DENIED**. Further, Mr.

---

[10] During oral argument at the November 17, 2025, hearing, Mr. Lapierre's counsel conceded that he could not prove discriminatory intent on the part of the Government in choosing to prosecute Mr. Lapierre in federal court. Without establishing discriminatory intent, Mr. Lapierre's selective prosecution claim must fail. *See Lewis*, 517 F.3d at 25.

Lapierre's amended motion to suppress for lack of probable cause, ECF No. 41, is likewise **DENIED**.

**SO ORDERED.**

Dated this 19th day of December, 2025.

/s/ Stacey D. Neumann
**UNITED STATES DISTRICT JUDGE**