UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | 2:25-cr-00102-SDN |
| JAMES LAPIERRE, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING MOTION FOR A NEW TRIAL**

On May 22, 2026, a jury found Defendant James Lapierre guilty of Attempted Sex Trafficking of a Minor in violation of 18 U.S.C. §§ 1591(a)(1) and 1594(a). ECF No. 158. Mr. Lapierre seeks a new trial, *see* ECF No. 162, alleging *Brady* violations related to a document admitted at trial as Defense Exhibit 1, and communications between law enforcement and a representative of "Skip the Games," a website commonly used to advertise commercial sex activity.[1] For the following reasons, the Court **DENIES** Mr. Lapierre's motion for a new trial.

**BACKGROUND**

This case arose from a federal "sting operation," in which law enforcement officers posted advertisements on the Skip the Games website offering commercial sexual activity with a minor female. Mr. Lapierre responded to an advertisement, communicated with an undercover officer, and drove to the provided location, where he was apprehended by

[1] Mr. Lapierre requests a hearing on the nature of the evidence withheld. ECF No. 162 at 5. The Court finds no hearing is necessary because the Government has filed the communications described by the defense, *see* ECF No. 190.

officers. At trial, Mr. Lapierre raised the affirmative defense of entrapment, and the Court rendered a jury instruction on entrapment at the conclusion of trial.

Mr. Lapierre argues a new trial is warranted because the Government did not provide certain evidence in discovery, specifically: (1) a document Mr. Lapierre describes as "a strongly worded disclaimer" displayed on the Skip the Games website, ECF No. 162 at 1, which was admitted at trial as Defense Exhibit 1, *see* ECF No. 172-1 (the "Disclaimer");[2] and (2) communications between Sergeant Taylor Bagley and a representative of Skip the Games related to opening user accounts for investigative purposes, *see* ECF No. 190 (the "Communications").[3]

## DISCUSSION

Under Federal Rule of Criminal Procedure 33, a "court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "Motions for a new trial are directed to the broad discretion of the trial judge, who may weigh the evidence and evaluate the credibility of witnesses in considering such a motion." *United States v. Wilkerson*, 251 F.3d 273, 278 (1st Cir. 2001) (quoting *United States v. Indelicato*, 611 F.2d 376, 387 (1st Cir. 1979)).

Under *Brady v. Maryland*, 373 U.S. 83 (1963), "the government offends due process if it causes prejudice to the defendant by either willfully or inadvertently suppressing exculpatory or impeaching evidence in its custody or control that is favorable to the accused." *United States v. Peake*, 874 F.3d 65, 69 (1st Cir. 2017) (quotation

---

[2] The Disclaimer provided as follows, in pertinent part: "If you are not an adult or if we find out that you are using our site for something non-consensual, we'll do everything we can to stop that. . . . If you work with law enforcement and you are investigating something non-consensual that is related to our site, or involves a minor, please contact us . . . ." ECF No. 172-1 at 2.

[3] The Government initially filed Exhibit 2 under seal. ECF No. 173. In response to the Court's show cause order, ECF No. 187, the Government filed a redacted version of Exhibit 2, ECF No. 190.

modified). A defendant who premises a motion for a new trial on a colorable *Brady* violation must show: (1) the evidence was unknown or unavailable to them at trial; (2) the failure to discover the evidence did not result from a lack of diligence; and (3) "a reasonable probability that, had the evidence been disclosed to the defense in a timely manner, the result of the proceeding would have been different." *Id.* (quotation modified).

The Court evaluates below whether Mr. Lapierre has made the foregoing showing with respect to the challenged documents.

**I. The Disclaimer**

Mr. Lapierre has not demonstrated the Government's failure to disclose the Disclaimer warrants a new trial. First, the Disclaimer was neither unknown nor unavailable to him at trial; indeed, the defense moved for its admission, and it was admitted. Second, the record shows the defense exercised due diligence and discovered the disclaimer in time to use it at trial, which it did.

As to the third element, a reasonable probability of a different result had the Disclaimer been timely disclosed, the defense successfully moved for admission of the Disclaimer at trial and read it in its entirety to the jury during closing arguments, then posed the following question: "If you're going on this website, and you're reading that disclaimer and you're looking for a minor, do you think that you're going to be welcome on that website or do you think the opposite?" ECF No. 165 at 4. The defense does not squarely address how its presentation would have differed had the Government provided the Disclaimer in discovery.

Finally, the parties dispute whether the Disclaimer is better characterized as inculpatory or exculpatory. The Court need not resolve that question because, even

assuming the Disclaimer is exculpatory, Mr. Lapierre has failed to satisfy any of the three prongs set forth in *Peake*.

## II. The Communications

The Government agrees the Communications were not available to defense counsel at the start of trial.[4] *See* ECF No. 172 at 14–15. The parties' dispute instead centers on the probative value of the Communications. Mr. Lapierre contends the Communications would have been impeaching and relevant to his entrapment defense.[5]

Specifically, Mr. Lapierre argues the communications in which law enforcement agents told Skip the Games they were not investigating consenting adults engaging in prostitution could impeach Special Agent ("SA") Eric Tracy's testimony that "he was always interested in information about individuals promoting prostitution, regardless of whether the victim was a minor." ECF No. 162 at 4.

Review of SA Tracy's testimony in context reveals Mr. Lapierre's argument is premised on a mischaracterization of the testimony. SA Tracy's testimony was as follows:

> [Q.] Your investigation was targeting sex trafficking in minors, correct?
> A. Yes.
> Q. And you weren't interested in targeting sex trafficking in adults; is that right?

[4] The Government suggests, however, that defense counsel should have been aware of the existence of the Communications no later than the first day of trial, after Sergeant Taylor Bagley testified that he had contacted Skip the Games. ECF No. 172 at 2 (citing ECF No. 166 at 93 ("Q. Did you contact [Skip the Games]? A. Yes.")). The Government, emphasizing the defense's failure to request a sidebar, an opportunity to examine Sergeant Bagley outside the presence of the jury, production of additional discovery, a continuance, or any other relief, infers that defense counsel believed the Communications would not further the defense theory. *Id.* at 14–15.

[5] "[A]n entrapment defense has two prongs: '(1) improper government inducement and (2) the defendant's lack of predisposition to commit the offense charged.'" *United States v. Pérez-Otero*, 176 F.4th 129, 145 (1st Cir. 2026) (quoting *United States v. Pérez-Rodríguez*, 13 F.4th 1, 17 (1st Cir. 2021)). "Improper inducement occurs when law enforcement agents engage in conduct of the type that would cause a person not otherwise predisposed to commit a crime to do so." *Id.* (quotation modified). Examples of improper inducement include "excessive pressure by the government upon the defendant or the government's taking advantage of an alternative, noncriminal type of motive." *United States v. Hinkel*, 837 F.3d 111, 117 (1st Cir. 2016) (quoting *United States v. Gendron*, 18 F.3d 955, 961–62 (1st Cir. 1994)).

A. That's not true.
Q. Well, when James Lapierre asked to have sex with the adult, the response was no, I'm not available, correct?
A. Correct.
Q. So if you were targeting sex trafficking with adults, then your agent would have said yes, I'm available, correct?
A. We weren't targeting, but you said I wasn't interested in it.
Q. All right.
A. I am always looking for suspects of sex trafficking.
Q. You weren't going to arrest him for that, correct?
A. Sex trafficking of an adult?
Q. Right.
A. There was no force or coercion at that point.

ECF No. 168 at 48–49.

SA Tracy was asked about "sex trafficking," not prostitution. SA Tracy did not testify that he was "interested in" or actively investigating prostitution among adults in the absence of force or coercion. And, as the Government points out, "there is no inconsistency between law enforcement focusing on limited crimes . . . during their investigation in this case, and the full scope of crimes in which SA Tracy has a professional interest." ECF No. 172 at 5.

As to entrapment, the defense argues: "If the communication[s] between the police and the website indicated that the police were trying to steer individuals toward higher level offenses, then that information would have been relevant to entrapment." ECF No. 162 at 4. The Communications do not contain evidence of "steering" tactics, however, so this argument is unavailing.[6] *See* ECF No. 190.

---

[6] Mr. Lapierre attempts to distinguish *Joost v. United States*, 226 F. App'x 12 (1st Cir. 2007). There, the First Circuit rejected a *Brady* claim, concluding that communications revealing law enforcement's strategy to direct the defendant's "energies to a high-penalty armored-car robbery or firearms crime rather than the other serious ventures which did not involve firearms," *id.* at 14. Mr. Lapierre argues that discussions about "steering" him toward attempted sex trafficking of a minor would have carried a greater likelihood of affecting the outcome because the evidence would have provided noncumulative support for his defense. ECF No. 162 at 4. The Court does not address this argument further because the Communications do not contain evidence of "steering."

In his reply, Mr. Lapierre further argues the Communications demonstrate Skip the Games restricted law enforcement's use of the platform and that investigating officers violated those restrictions. ECF No. 186 at 3. He points to the following instruction from a Skip the Games representative to Detective Dezarae Fillmyer: "We also ask that you don't use photos of adult females that have been digitally modified to look like they are a minor. No images of minors generated by AI either please." ECF No. 190 at 4. He maintains that evidence of the officers' noncompliance would have strengthened his challenge to the integrity of the investigation and supported his claim that law enforcement employed deceptive tactics, supporting his entrapment defense.

The Court is not persuaded the prohibition against digitally modified images would have materially strengthened Mr. Lapierre's entrapment defense. Mr. Lapierre does not allege he was aware of the prohibition when he viewed the advertisements and communicated with undercover officers. Moreover, the jury already had before it the Disclaimer, law enforcement's communications with Mr. Lapierre, and extensive testimony concerning the officers' investigative tactics and use of the Skip the Games platform. Evidence of the platform's prohibition would have added little to the evidence the jury considered. *See Moreno-Morales v. United States*, 334 F.3d 140, 148 (1st Cir. 2003) ("[T]he unavailability of cumulative evidence does not deprive the defendant of due process." (quoting *United States v. Sanchez,* 917 F.2d 607, 618 (1st Cir. 1990)).

Mr. Lapierre also argues the prohibition, together with the officers' violation of it, would have provided valuable impeachment material. "Wrongly withheld impeachment evidence, if powerful enough, can be prejudicial and grounds for a new trial. . . . particularly . . . where the evidence is highly impeaching or when the witness'

testimony is uncorroborated and essential to the conviction." *United States v. Martinez-Medina*, 279 F.3d 105, 126 (1st Cir. 2002).

The Communications offer little impeachment value. Neither Sergeant Bagley nor Detective Fillmyer, the officers who corresponded with Skip the Games, expressly agreed to comply with the prohibition, and Mr. Lapierre identifies no inconsistency between their testimony and the Communications. *See* ECF No. 190. Furthermore, other evidence corroborated their testimony, and the jury heard extensive evidence concerning the tactics Mr. Lapierre characterizes as deceptive.

Accordingly, the Government's failure to disclose the Communications does not undermine confidence in the verdict.

## CONCLUSION

Mr. Lapierre has not established a reasonable probability that disclosure of the Communications before trial would have changed the outcome or that the Disclaimer was unavailable to the defense. Accordingly, the Court **DENIES** Mr. Lapierre's motion for a new trial, ECF No. 162.

**SO ORDERED.**

Dated this 10th day of November, 2026.

/s/ Stacey D. Neumann
**UNITED STATES DISTRICT JUDGE**